## PEOPLE v ANDERSON

1. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—RIGHT TO COUNSEL —CUSTODY.

Defendant in the custody of another police department on an unrelated charge is not entitled to representation by counsel at a photographic identification proceeding unless the investigation has focused on him.

2. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—EVIDENTIARY RECORD.

An evidentiary record showing that the investigation has not focused on the defendant is necessary to sustain findings that a criminal defendant, in the custody of police, was not entitled to have his attorney present at a photographic showup, that the photographic showup was not impermissively suggestive, or that the in-court identifications had an independent basis.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 313, 314.

Accused's right to assistance of counsel at or prior to arraignment. 5 ALR3d 1269.

Accused's right to counsel under the Federal Constitution—Supreme Court Cases. 18 L Ed 2d 1420.

[3] 29 Am Jur 2d, Evidence §§ 367, 485, 791.

Authentication or verification of photograph as basis for introduction in evidence. 9 ALR2d 899.

Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

Admissibility and prejudicial effect of admission of "mug shot," "rogues' gallery" photograph, or photograph taken in prison, of defendant in criminal trial. 30 ALR3d 908.

Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedure. 39 ALR3d 1000.

[4] 45 Am Jur, Records and Recording Laws § 12.

21 Am Jur 2d, Criminal Law § 369.

Right to take fingerprints and photographs of accused before trial, or to retain same in police record after acquittal or discharge of accused. 83 ALR 127.

[5] 21 Am Jur 2d, Criminal Law § 125 *et seq.*

46 Am Jur 2d, Judges § 166 *et seq.*

3. CRIMINAL LAW—IDENTIFICATION—FREEDOM FROM TAINT—BURDEN
OF PROOF.

> The burden of proof shall be on the prosecution at a hearing to
> determine whether there is independent basis for in-court
> identifications if they have failed to meet their burden in
> showing that the original identifications were untainted by
> illegal or impermissibly suggestive pretrial photographic identi-
> fication procedure.

4. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—RECONSTRUCTION.

> Basic fairness requires that a record be kept of pictures used at a
> pretrial photographic showup so that the sample can be recon-
> structed upon request; failure to reproduce the set of photo-
> graphs will be an important factor in determining whether the
> prosecution has carried its burden of proving the showup fair.

5. CRIMINAL LAW—SENTENCING—JUDGE'S EVALUATION OF CODEFEN-
DANT.

> A defendant is entitled to be resentenced if the judge's remarks
> indicate that animosity toward a codefendant influenced the
> sentence, since a trial judge's evaluation of a codefendant is
> irrelevant in sentencing the defendant.

Appeal from Recorder's Court of Detroit, Henry
L. Heading, J. Submitted Division 1 April 4, 1972,
at Detroit. (Docket No. 10839.) Decided July 24,
1972. Leave to appeal applied for.

James L. Anderson was convicted of armed rob-
bery. Defendant appeals. Remanded with instruc-
tions.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Gerard A.
Poehlman,* Assistant Prosecuting Attorney, for the
people.

*Arthur J. Tarnow,* State Appellate Defender,
and *Richard S. McMillin,* Assistant Defender, for
defendant.

Before: LEVIN, P. J., and BRONSON and VAN VALKENBURG,* JJ.

BRONSON, J. Defendant and one Oscar Purvey were jointly tried for the armed robbery of a Detroit loan office in violation of MCLA 750.529; MSA 28.797, by a jury in Detroit Recorder's Court. Purvey was acquitted. Defendant was convicted and sentenced to life imprisonment. He appeals of right.

Defendant raises four allegations of error. The first two deal with a pretrial photographic showup in which he was identified. The last two call our attention to factors considered by the trial judge in sentencing defendant. The facts relevant to each allegation will be set forth prior to our discussion of each issue.

### The Pretrial Photographic Showups

The robbery in question occurred on February 5, 1970. Defendant and Purvey were arrested February 11, 1970, on an unrelated charge by the Southfield, Michigan, police. They were photographed by the Southfield police on the same day. Officers from the Detroit Police Department went to Southfield on February 12 and obtained copies of these photographs after defendant refused to let them rephotograph him.

On February 12, Detroit police officer Theodore Farquhar took some photographs to the loan office and showed them to employees who had witnessed the robbery. The officer could not remember whether defendant's picture was among those he exhibited. No identification was made on this date.

On February 13, Detective Jay Moore conducted

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

a second photo showup at the loan office. Seventeen pictures, including the defendant's, were shown to witnesses. Five witnesses identified him as a participant in the robbery. Defendant was still being held by the Southfield police and an attorney was not present at this showing to represent him.

At trial, defendant was identified by the five witnesses who had picked his photograph and by two witnesses who appear not to have seen his photograph prior to trial. During the testimony of Detective Moore, defendant's attorney moved to strike the in-court identification of the five witnesses who viewed the photographs because the prosecution could not show that the showups were not suggestive. The motion was denied.

Defendant's first contention is that the trial judge erred in denying this motion as no attorney was present at the pretrial photographic showups to represent the defendant. As defendant was in custody and had been questioned about this robbery, the use of the photo showup rather than a lineup effectively denied him the constitutional right to have an attorney present at a confrontation. The in-court identifications must be considered tainted as the product of an illegal confrontation and thus inadmissible. *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967); *Simmons v United States,* 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968).

The prosecutor counters by arguing that the photographic showups were proper since defendant was not in the Detroit Police Department's custody and had not been accused of the crime. Further, the record shows that the proceedings were conducted fairly and that the in-court identifications were based on independent observations.

At the outset we note that defense counsel's motion at trial went to the showup's fairness and was based on Detective Moore's inability to produce all 17 photographs used. The right to counsel argument made to us is raised for the first time on appeal. Generally, challenges to pretrial confrontations are reviewed only when a timely motion to suppress is made. *People v Childers,* 20 Mich App 639, 645–646 (1969). However, the failure to preserve constitutional errors does not preclude judicial, review. *People v Limon,* 4 Mich App 440 (1966). Our primary concern is to insure the defendant a fair trial. *People v Degraffenreid,* 19 Mich App 702 (1969). At trial, the crucial issue was the robbers' identity. Since the pictures used in the February 12 showup were chosen by computer and the defendant was not identified, we believe that if any error occurred at this showup it was, on this record, harmless constitutional error. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). The same cannot be said for the February 13 showup. Our discussion will be concerned only with that identification proceeding.

Defendant's argument turns, in part, on the fact that he was in custody at the time. In *People v Cotton,* 38 Mich App 763 (1972), this Court held that an accused who is in custody is entitled to representation by counsel at any photographic identification proceeding. The Court went on to note, in strong dicta, that even where an accused is not in custody, the right exists where the investigation has focused on the individual. See, also, *United States v Zeiler,* 427 F2d 1305 (CA 3, 1970).

In *Cotton,* the defendant was arrested for and convicted of armed robbery. The photographic showup occurred after Cotton had been assigned counsel and had appeared in two lineups. In the in-

stant case, defendant was being held by another police department on an unrelated charge. While defendant was in "custody", we do not believe it was necessarily the type of custody to which *Cotton* refers. Custody itself adds little to a person's Sixth Amendment rights unless the investigation has focused on him. *United States v Davis,* 399 F2d 948 (CA 2, 1968). See *Escobedo v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964).

Our inquiry in this case then is whether the investigation had ceased to be general and had focused on the defendant. On the record before us, there is not sufficient information from which we can make such a determination. We therefore remand this case for an evidentiary hearing. Among the factors the trial judge should consider in deciding this issue are the reasons for the showups and how far the investigation had advanced at the time of the showups.

If the trial judge shall determine that the presence of an attorney was not required at the February 13 showup, he shall next consider whether it was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v United States, supra.* Finally, if the trial court shall determine that the pretrial photographic identification procedure was illegal or impermissibly suggestive, he shall determine whether there was an independent basis for the in-court identifications. The test for such a determination is found in *Wong Sun v United States,* 371 US 471, 488; 83 S Ct 407, 417; 9 L Ed 2d 441, 455 (1963):

" '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality

or instead by means sufficiently distinguishable to be purged of the primary taint.' "

See, also, *People v Martin,* 37 Mich App 621 (1972). If the trial judge determines that the February 13 showup denied defendant his right to counsel or was impermissibly suggestive and that the in-court identifications were tainted, he shall order a new trial. At this trial, evidence of the pretrial identification proceeding shall be inadmissible.

At this hearing, the burden shall be on the prosecution. *People v Young,* 21 Mich App 684, 693 (1970). This brings us to the second allegation of error raised by the defendant. He contends that he was denied due process by the intentional discarding of the photographs used prior to trial. *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *United States v Bryant,* 142 US App DC 132; 439 F2d 642 (1971); *United States v Consolidated Laundries Corp,* 291 F2d 563 (CA 2, 1961).

In *Brady,* the Supreme Court held that due process was violated when the prosecution suppressed evidence favorable to the defendant upon request. In both *Brady* and *Consolidated Laundries,* the suppressed evidence was in the prosecutor's possession and the courts were able to determine whether the evidence was favorable or not. In the instant case, like *Bryant,* it is not possible to determine whether the photographs were favorable or not. The inability to produce all the photographs used, however, clearly inhibited defense counsel's ability to cross-examine the identifying witnesses. We believe that basic fairness requires that a record be kept of the pictures used so that the sample can be reconstructed upon request. See *People v Rowell,* 14 Mich App 190, 197, fn 1 (1968), (concurrence by Levin, J.). At the hearing, the

prosecution's ability to reproduce the set of photographs will be an important factor in determining whether they have carried their burden.

## The Sentencing

We consider the defendant's allegations concerning his sentencing because we believe that if the trial judge determines that no new trial is warranted, the defendant is entitled to be resentenced.

The defendant's third allegation of error is that the trial judge erred when he allowed his animosity toward Purvey to influence defendant's sentence. The prosecutor contends that any reference to Purvey at the sentencing did not affect the trial judge's attitude toward defendant.

The following colloquies occurred at the sentencing:

"*The Court:* He exposed you. He put you out there where everybody in that place could see you, and he was hiding, you see. That's how he got out.

"Now you are going to protect him.

"If I was you, whatever case he had been with me on, I would tell them. Tell the truth. He is the one I wanted. I wouldn't have had any problem with him.

"*The Defendant:* I know. That was my sister's—

"*The Court:* See, I was going to give him 75 to 100, that's what I was going to give him. Under the jailhouse, see; get rid of him. See, he had you doing that, see.

"*The Defendant:* Yah, I know.

"*The Court:* He's 30 years old, and you are 17. He had no business even running around with you. But he was the one I wanted to get my hands on so bad. I guess that's why that jury let him go. Now you have to take it.

\* \* \*

"But I am going to get that Purvey, you watch; he is

going to come sailing through this court one day, and I am going to ask the judge that has his case to give him to me, see. If I would ever get that Purvey up there like I want him, I might let you out, but I want Purvey, see. If I get Purvey, that's all; then I can get on out. I might quit the bench after I get Purvey; give it up, see. But I want Purvey."

The statute under which defendant was convicted provides for life imprisonment or imprisonment for a term of years. MCLA 750.529; MSA 28.797. These alternatives allow the judge to fit the sentence to the individual's rehabilitative needs and to society's needs. The ability to fit the sentence to the individual is consistent with the spirit of our indeterminate sentence law. MCLA 769.8; MSA 28.1080. See *People v Lessard,* 22 Mich App 342 (1970). To aid the judge in this task, he is provided with a presentence report which gives him a background on a defendant's antecedents, character, and circumstances. MCLA 771.14; MSA 28.1144. The judge may, of course, consider factors outside the presentence report. Among these are the trial judge's impressions of defendant during the trial. In the instant case, the judge's remarks make it clear that Purvey was on his mind. A trial judge's evaluation of a codefendant is irrelevant to the sentencing of this defendant.

Finally, defendant alleges that it was error for the trial judge to consider his juvenile record. We agree. *People v McFarlin,* 41 Mich App 116 (1972).

Remanded for proceedings consistent with this opinion.

All concurred.